F. E. McGillick Company v. Commissioner.
F. E. McGillick v. Commissioner
Docket No. 40529.
United States Tax Court
1953 Tax Ct. Memo LEXIS 24; 12 T.C.M. (CCH) 1404; T.C.M. (RIA) 53402; December 11, 1953
*24 John J. Dougherty, Esq., 2405 1st National Bank Building, Pittsburgh, Pa., for the petitioner. Edward L. Cobb, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the income tax of the petitioner of $6,467.94 for 1948 and $2,446.31 for 1949. The only issue for decision is - what was a reasonable salary for F. E. McGillick, president of the petitioner, for each of the taxable years. Findings of Fact F. E. McGillick incorporated the petitioner under the laws of Pennsylvania in 1932 and transferred real property to it at that time. Its income tax returns for the taxable years, prepared on an accrual basis, were filed with the collector of internal revenue for the Twenty-third District of Pennsylvania. A. Louise Schultz owned one share of the stock of the petitioner and the other forty-nine shares were owned either by McGillick or by Francis Edward McGillick Foundation at all times material hereto. McGillick and Louise, whom he married in 1945, were the trustees of Francis Edward McGillick Foundation and McGillick voted all of the shares of stock of the petitioner held by the foundation, during *25 the taxable years. The petitioner owned, during the taxable years, 210 rental units, residential and commercial, in and about Pittsburgh, and a theatre, which had a total cost at the end of each year of $632,497.14 and a fair market value of over $1,000,000. It also owned unimproved properties in the same area, the cost of which at the end of 1948 was $103,266.09 and at the end of 1949 was $98,601.39. The unimproved properties had a market value of between $900,000 and $1,000,000 during the taxable years. It purchased no properties during the taxable years and sold no improved properties in 1949. It sold two improved properties in 1948 and three unimproved properties in 1948 and five unimproved properties in 1949. The sales resulted in gains of $29,775.45 in 1948 and $12,285.05 in 1949. McGillick represented the petitioner in negotiations involved in those sales. The following table shows rentals collected by the petitioner and by other real estate agents on properties of the petitioner during the taxable years and commissions paid to the other agents: 1948
1949
Petitioner
$57,977.47
$49,898.15
(11 properties - 64 - 76
units)
Other agents
79,457.93
79,540.36
(16 properties - 146 - 134
units)
Commissions paid to the
other agents
3,970.51
3,977.08
*26 The commissions paid were for renting the properties, collecting the rents and paying for water, electricity and small repairs. The amounts paid to the petitioner by the renting agents were net rentals. Rent controls prevented rents from being increased and the shortage of rental property made renting easy during the taxable years. McGillick's fifty-year-old son supervised a maintenance crew which did work and made repairs on properties of the petitioner during the taxable years. McGillick had the final decision as to what work the crew would do. The petitioner owned and operated a motion picture theatre during the taxable years. It employed a manager who operated the theatre under the general supervision of McGillick. The manager received a salary of about $2,900. McGillick bought films. McGillick was president and general manager of the petitioner during the taxable years. He was then about eighty-five years of age. He had had many years of business experience. He had general supervision of the rental properties, determined the amount of insurance to be carried on each property, made some of the leases, saw some tenants who came to the office of the petitioner and inspected all *27 of the properties at intervals of from one week to one month. He was usually in the office every day. The petitioner employed between twenty-one and thirty-two people during the taxable years. Louise and a clerk were in the office. Louise was secretary, treasurer, bookkeeper and in charge of the office. She was an attorney specializing in real estate law. She received a monthly retainer of $250 for representing the petitioner and was paid additional amounts for particular legal services rendered. She had been with McGillick for many years. She received a salary or fees from the petitioner of $7,000 in 1948 and $7,500 in 1949. The following table shows the amount of salary for McGillick authorized for the years 1939 through 1944 and claimed on the returns for the years 1945 through 1949: Year
Amount
1939
$12,000.00
1940
12,000.00
1941
12,000.00
1942
12,000.00
1943
10,000.00
1944
10,000.00
1945
10,000.00
1946
25,000.00
1947
32,000.00
1948
40,000.00
1949
20,000.00 The board of directors of the petitioner voted salaries of $40,000 for McGillick for 1948 and $25,000 for 1949. McGillick waived his salary as shown in the above table for the years *28 1939 through 1944 and returned to the petitioner all of his salary shown in the above table for the years 1945 through 1948. He also returned $12,800 of his salary for 1949. McGillick and Louise filed a joint return for 1948 reporting no tax due. Included in that return was $32,000 representing McGillick's salary from the petitioner for 1947 and $40,000 representing his salary from the petitioner for 1948. A loss of $105,333.31 from the sale of property other than capital assets was reported on that return. McGillick and Louise filed a joint return for 1949 in which $20,000 was reported as McGillick's salary from the petitioner. The net income shown in that return was $25,246 and the tax shown was $5,758.75. The gross income of the petitioner for 1948 was $167,364.22 and for 1949 was $169,391.14. It reported a net loss of $399.06 for 1948 and net income of $17,989.39 for 1949. The petitioner never paid any dividends at any time material hereto. The Commissioner allowed $10,000 as a reasonable deduction for a salary of McGillick for the years 1945 through 1949. A reasonable allowance for salary or other compensation for personal services actually rendered by McGillick to the *29 petition for each of the years 1948 and 1949 is $12,000. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The stockholding situation in the present case is one justifying and requiring scrutiny. McMillan Metal Co., 2 B.T.A. 797; The Barto Co., 21 B.T.A. 1197; Kerrigan Iron Works, Inc., 17 T.C. 566, 572. McGillick created the petitioner corporation for his own purposes and used it during the taxable years for his own purposes. He voted all, or all but a few, shares of its stock, most of which were owned by a foundation the nature of which is not disclosed but which he also created for his own purposes and controlled. He fully controlled and dominated the petitioner. He fixed and changed his salary to suit his own purposes, including one to minimize taxes. His authorized salary of $40,000 for 1948 absorbed all of the earnings of the corporation and left it with a small loss for the year. He reported the entire $40,000 for that year and also $32,000 for the previous year on his joint 1948 return on which he had a large loss which completely offset the amounts of salary reported. He had *30 been in the habit of waiving his salary, but in 1945 he adopted the practice of receiving it and then turning it back. The only amount actually retained by him during the period from 1939 through 1949 was $7,200 in 1949. The petitioner in its brief says that the question presented is whether a salary of $40,000 for 1948 and one of $20,000 for 1949 represented reasonable compensation. If that were the only question, the answer would be simple because they obviously were in excess of reasonable compensation for his services. The real question is to determine a much smaller amount which does represent reasonable compensation for the services rendered by him to the petitioner during each of the taxable years. The Commissioner has allowed for each year a deduction of $10,000 to represent reasonable compensation to McGillick. The entire record has been carefully examined and appraised in an effort to determine whether it justifies the allowance of any larger amount, and the conclusion has been reached that $12,000 is a reasonable allowance for salary or other compensation for personal services actually rendered by McGillick to the petitioner for each of the years 1948 and 1949. Decision *31 will be entered under Rule 50.